IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BILLY MILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-3568-MAB |
| | ) |
| PERCY MYERS, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Dr. Percy Myers' Motion for Partial Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies (Docs. 28, 29). For the reasons set forth below, Dr. Myers' motion is DENIED (Doc. 28).

BACKGROUND

Plaintiff Billy Miles filed this civil rights action on November 2, 2023, pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (*see* Doc. 1). Plaintiff's Complaint alleges that from December 14, 2021, until January 5, 2022, Plaintiff was in Pinckneyville's health care unit due to a blocked artery in his left leg (*Id.* at p. 6; Doc. 10 at p. 2). On January 5, 2022, Plaintiff asked Dr. Myers for a lower deck and lower bunk permit, but Dr. Myers denied his request (Doc. 10 at p. 2). Every time Plaintiff repeated this request, Dr. Myers would dismiss his request and reply, "one thing at a time." (*Id.*). Dr. Myers also told Plaintiff that lower deck and lower bunk permits are only issued to

inmates with seizures (*Id.*). Dr. Myers discharged Plaintiff from the healthcare unit on January 5, 2022, even though Plaintiff's left leg was still sore and swollen (*Id.*).

The Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and Plaintiff was permitted to proceed on the following claim:

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. [Percy] Myers for failing to provide Miles with a lower bunk, lower deck permit and for failing to properly treat his clogged artery.

(*Id.* at pp. 3-4).

On August 5, 2024, Dr. Myers filed the instant Motion for Partial Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies (Docs. 28, 29). Thereafter, on August 14, 2024, Plaintiff filed a motion to stay case, which requested a stay on all of his currently pending cases because he had been placed in segregation (Doc. 31). The Court denied Plaintiff's motion because he did not provide any explanation as to why he was unable to respond to Dr. Myers' motion while he was in segregation (Doc. 32). However, the Court *sua sponte* extended Plaintiff's response deadline to October 1, 2024 (*Id.*). Nonetheless, Plaintiff did not file a response or seek an extension by that date, and as of the date of this Order, no response or subsequent filing has been submitted by Plaintiff.[1]

---

[1] Plaintiff's failure to respond to Dr. Myers' motion is deemed an admission that Dr. Myers' version of the facts is true (*see* Doc. 29 at pp. 2-3). SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). Therefore, the facts asserted by Dr. Myers are deemed admitted to the extent that they are supported by evidence in the record. *See* Fed. R. Civ. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). The admission of Dr. Myers' material facts, however, does not automatically grant his motion for summary judgment; Dr. Myers must still demonstrate that he is entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

## **LEGAL STANDARD**

*I.     Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Furthermore, courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

*II.    Exhaustion Requirements*

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).[2]

III.    *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections ("IDOC") are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden

---

[2] The Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact related to a prisoner's efforts to exhaust when considering an exhaustion-based motion for summary judgment. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, in light of Dr. Myers' concessions and Plaintiff's failure to respond, the Court is able to rule upon Dr. Myers' motion without conducting a hearing because there are no disputed, material issues of fact. *See Robinson v. Budde*, No. 18-CV-6998, 2021 WL 1722857, at *4 (N.D. Ill. Apr. 30, 2021) ("Since the parties agree on the facts, there is no need for a hearing.").

reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he or she may appeal in writing to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). However, the ARB must receive the inmate's appeal within 30 days from the date of the warden's decision. *Id.* The ARB then submits a written report to the Director, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting a grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of that emergency grievance. *Id.* at § 504.850(f).

## Discussion

Dr. Myers filed the instant Motion for Partial Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies seeking summary judgment on the portion of Plaintiff's Eighth Amendment deliberate indifference claim related to his

treatment of Plaintiff's clogged artery (Doc. 28 at p. 2).[3] Specifically, Dr. Myers argues that none of Plaintiff's grievances identified and thus, exhausted, Plaintiff's claim against Dr. Myers for failing to properly treat Plaintiff's clogged artery (*see* Doc. 29 at p. 6). For the reasons discussed below, the Court DENIES Dr. Myers' motion (Doc. 28).

Dr. Myers attached Plaintiff's grievance logs, and four potentially relevant grievances filed by Plaintiff (*see generally* Doc. 29-1). This includes Grievance No. 425-02-22, dated January 30, 2022 (*Id.* at pp. 20-21); Grievance No. 590-02-22, dated February 14, 2022 (*Id.* at pp. 16-18); Grievance No. 620-02-22, dated February 16, 2022 (*Id.* at pp. 11-13); and Grievance No. 977-04-22, dated April 4, 2022 (*Id.* at pp. 7-8). Ultimately, because Grievance No. 590-02-22 is dispositive, the Court focuses its exhaustion analysis upon that grievance.

Significantly, Dr. Myers has not argued that Grievance No. 590-02-22 was not procedurally exhausted (*see* Doc. 29 at p. 3, fn. 3).[4] In other words, Dr. Myers has conceded that Plaintiff may have timely filed and appealed Grievance No. 590-02-22, thereby satisfying his procedural exhaustion requirements for that grievance.[5] Accordingly, Dr.

---

[3] Dr. Myers concedes that Plaintiff exhausted his administrative remedies as to his claim against him for failing to provide Plaintiff with a lower deck and lower bunk permit (*see* Doc. 28 at p. 2). For this reason, Dr. Myers has only moved for partial summary judgment (*Id.*).
[4] More specifically, Dr. Myers stated in his motion that, "For purposes of this motion, Dr. Myers does not challenge the timeliness of Plaintiff's appeal of his February 14, 2022 grievance or that Plaintiff exhausted his February 14, 2022 grievance because Dr. Myers recognizes that there may be a question of fact of when Plaintiff placed his grievance in the prison mail." (Doc. 29 at p. 3, fn. 3).
[5] The Court appreciates Dr. Myers' candor on this point, particularly because the ARB denied this grievance for the procedural reason that it was not received within 30 days of the Warden's decision as required by section 504.850(a) (*see* Doc. 29-1 at p. 14). While the Court need not address this issue in detail because of Dr. Myers' concession, it is worth noting that two separate reasons may have excused the untimeliness of Plaintiff's administrative appeal. First, Plaintiff's Complaint alleges that his grievance was not received by the ARB within 30 days of the Warden's decision due to delays related to Covid-19 quarantines (Doc. 29-1 at p. 6). Second, Plaintiff's grievance appeal was signed (and thus, most likely mailed) at least three days

Myers' motion hinges upon his claim that neither Grievance No. 590-02-22 nor any other exhausted grievance identified Plaintiff's claim that Dr. Myers failed to properly treat his clogged artery while in the healthcare unit (*see* Doc. 29 at p. 6).[6]

Dr. Myers argues that Grievance No. 590-02-22 does not adequately identify Plaintiff's claim that he failed to properly treat Plaintiff's clogged artery because that grievance only challenged Dr. Myers' failure to provide Plaintiff with a lower deck and lower bunk permit, and "it says nothing about Dr. Myers failing to properly treat Plaintiff's clogged artery." (Doc. 29 at p. 6). The Court is not persuaded by this argument.

While Grievance No. 590-02-22 undoubtedly grieves Dr. Myers' refusal to issue Plaintiff a lower deck and lower bunk permit, that grievance also challenges the overall treatment Plaintiff received from Dr. Myers for the clogged artery in his left leg. For instance, Plaintiff wrote that his "left leg still swollen and sore. Doctor Myers said he wanted to get [Plaintiff's] left leg blood flow balanced. That it." (Doc. 29-1 at p. 17). Later in that grievance, Plaintiff reiterated his concern that his "left leg is still swollen and sore." (*Id.*). Accordingly, these statements provided adequate notice of Plaintiff's claim against Dr. Myers regarding the treatment he provided Plaintiff for the clogged artery in his left

---

before the ARB's receipt deadline, creating the potential that its untimeliness could have been excused due to mailing delays outside of Plaintiff's control (*compare* Doc. 29-1 at p. 15 *with* Doc. 1 at p. 12) (showing Plaintiff signed the form appealing the Warden's decision to the ARB on 4/10/22, although it appears he may have incorrectly listed the date of his appeal as 3/10/22). Ultimately, because of Dr. Myers' concession, the Court does not further address the merits of either of these potential excuses for Grievance No. 590-02-22 not being received by the ARB within 30 days.

[6] In this regard, Dr. Myers' motion makes another reasonable concession. Specifically, Dr. Myers does not dispute that Grievance No. 590-02-22 explicitly identifies him and Plaintiff's claim against him regarding the denial of a lower deck and lower bunk permit (Doc. 29 at p. 6). Given this concession, the Court's analysis focuses upon whether Grievance No. 590-02-22 identified and exhausted the second portion of Plaintiff's claim related to the treatment of his clogged artery.

leg. *See Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842 (S.D. Ill. 2016) ("When prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies."); *Conley v. Birch*, No. 11-CV-0013-MJR-SCW, 2012 WL 4202702, at *5 (S.D. Ill. Sept. 19, 2012) ("Simply put, [Plaintiff's] grievance served its purpose of providing prison officials a reasonable opportunity to address his complaints."); *Wilson v. Holloway*, No. 19 C 8114, 2022 WL 444113, at *2 (N.D. Ill. Feb. 14, 2022) ("Though the allegations in the complaint and the grievance are not identical, they involve the same alleged wrongdoing and wrongdoer. And it is readily apparent from the grievance that Mr. Wilson—though he may have specifically referred to a perceived need for crutches—was contending that Dr. Holloway minimized his back injury and did not properly treat him for it, which is the essence of the claim he asserts against her in this case.").

Although Dr. Myers acknowledges these statements in Grievance No. 590-02-22, he claims they were insufficient because they were "only mentioned in the context of Plaintiff explaining why he believes Dr. Myers should have provided him with a lower bunk and lower deck permit." (Doc. 29 at pp. 6-7) This argument is equally unavailing. *See Miles v. Myers*, 23-CV-3572-NJR, 2024 WL 4891912, at *6 (S.D. Ill. Nov. 26, 2024) (rejecting a similar argument raised by Dr. Myers in one of Plaintiff's related cases and holding that, "[a]lthough Dr. Myers argues that Miles was merely providing 'background for [his] true complaint' (Doc. 31, p. 7), arguing that the nature of the grievance was only Dr. Myer's conduct on March 8, 2022, there is simply nothing in the record that supports

this contention. Miles's grievance clearly grieved Dr. Myers's treatment of Miles during his time in the healthcare unit.").

For one, the Grievance Officer who reviewed Grievance No. 590-02-22 recognized that part of Plaintiff's grievance was that he was discharged from the healthcare unit while his leg was still swollen and sore (*Id.* at pp. 15). In pertinent part, the Grievance Officer wrote "Grievant claims that on 1/5/22 he was discharged from health care. Grievant claims that his left leg is still swollen and sore." By repeating this aspect of Plaintiff's grievance, this implies that prison officials were aware that Grievance No. 590-02-22 was not just about Dr. Myer's refusal to issue Plaintiff a lower deck and lower bunk permit. *See*, *e.g.*, *Miles*, 2024 WL 4891912, at *5 ("Although Dr. Myers argues that Miles failed to provide enough information to put officials on notice that he was complaining about Dr. Myers's treatment during Miles's stay in the healthcare unit, the grievance response clearly shows that officials were aware of the nature of Miles's complaint."); *McGhee v. Torres*, No. 23-CV-24-PP, 2024 WL 2746701, at *5 (E.D. Wis. May 29, 2024) (finding a grievance about not receiving adequate pain medication and care, including not having seen a doctor, to be sufficient to bring a claim against the doctor for not providing him with proper care for his injuries after his fall); *Hogan v. Neal*, 3:19-CV-288-RLM-MGG, 2022 WL 3448778, at *6 (N.D. Ind. July 12, 2022) ("[T]he grievance officer's response reflects her understanding that the grievance concerned medical issues.").

Second, the Court does not believe it is appropriate to isolate Plaintiff's claim into two separate challenges with one being related to Dr. Myers' refusal to issue a permit, and the other addressing the treatment he received from Dr. Myers for his leg. To the

contrary, these challenges are inextricably intertwined; and Dr. Myers' decision to issue or not issue a lower deck and lower bunk permit was part of the overall medical treatment he provided for Plaintiff's clogged artery/injured left leg. *See, e.g.*, *Hart v. David*, 18-CV-567-JPG-RJD, 2019 WL 441963, at *4 (S.D. Ill. Jan. 4, 2019) ("Although Plaintiff's grievance addresses a number of other issues, there was sufficient information to put the institution on notice that Plaintiff was grieving the conduct of Dr. David."); *Hotchkiss v. David*, 713 Fed. Appx. 501, 504 (7th Cir. 2017) (reversing a preliminary dismissal and explaining that, among other allegations, the plaintiff's allegation that he was refused a low-bunk permit supported his contention against the defendant doctor that his treatment failed to address his underlying ailment). In fact, the Grievance Officer solicited a response from the health care unit when reviewing Grievance No. 590-02-22, and that response acknowledged that Dr. Myers' refusal to issue a lower deck and lower bunk permit was a medical decision (Doc. 29-1 at p. 15) ("The file does not indicate either [Dr. Myers or the Nurse] feels it is medically indicated at this time."). Therefore, because Grievance No. 590-02-22 questions Dr. Myers' justifications for refusing to issue him a lower deck and lower bunk permit[7] and prison officials were aware this was a medical decision related to Plaintiff's treatment (*see, e.g.* Doc. 29-1 at pp. 15-17), this provided further notice that Plaintiff was grieving Dr. Myers' treatment decisions related to the care of his left leg.

To summarize, Plaintiff provided Dr. Myers and IDOC officials with sufficient

---

[7] For example, Plaintiff wrote, "Doctor Myers refuse to give [Plaintiff a] lower deck and bunk permit. Doctor Myers said the only ones that get lower deck and lower bunk permits is for one leg inmates and inmates that have seizure." (Doc. 29-1 at pp. 16-17).

notice of his claim that Dr. Myers was not properly treating his clogged artery/leg by grieving: (1) his discharge from the healthcare unit while still in pain; (2) the continued swelling and soreness in his left leg; and (3) the refusal to issue him a permit that would have alleviated the need for him to climb stairs and into an upper bunk with his ongoing pain. Moreover, the Grievance Officer specifically acknowledged each of these assertions and recognized that the permitting decision was a medical decision, further demonstrating that Plaintiff's grievance notified prison officials of his complaint related to Dr. Myers' treatment of the clogged artery in his left leg. Consequently, Grievance No. 590-02-22 exhausted the entirety of Plaintiff's Eighth Amendment deliberate indifference claim raised against Dr. Myers in Count 1. Dr. Myers' exhaustion-based motion for partial summary judgment is DENIED (Doc. 28).

## CONCLUSION

For the reasons discussed above, Dr. Myers' Motion for Partial Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies is DENIED (Doc. 28; *see also* Doc. 29).

**IT IS SO ORDERED.**

**DATED:** March 26, 2025

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
